**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

SHERRONDA APPLEBERRY,

    Plaintiff,

v.

ADAMS COUNTY BOARD OF COUNTY COMMISSIONERS,
ADAMS COUNTY CORONER'S OFFICE,
JAMES HIBBARD, in his official capacity,

    Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff Sherronda Appleberry ("Plaintiff" or "Ms. Appleberry") by and through counsel David A. Lane and Qusair Mohamedbhai of KILLMER, LANE & NEWMAN, LLP, respectfully alleges for her Complaint and Jury Demand as follows:

## I. INTRODUCTION

1. This action arises out of the unlawful termination of Plaintiff's employment by Defendants. Plaintiff was discharged in retaliation by Defendants, among other unlawful reasons, due to her lack of tolerance of a sexually hostile work environment. During her employment with Defendants, Plaintiff observed sexual harassment by Deputy Coroner Mark Chavez. After complaining of sexual harassment, and complaining to Defendant Hibbard directly concerning Mr. Chavez's treatment of women in the workplace, Ms. Appleberry was subjected to retaliation and ultimately terminated.

2. This is an action for damages to redress the violation of Plaintiff's rights pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000-e *et seq*.

## II.     JURISDICTION AND VENUE

3. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. ("Title VII") .

4. The employment practices alleged herein to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## III.     JURISDICTIONAL PREREQUISITES

5. Plaintiff timely filed a Charge of Discrimination with the Colorado Civil Rights Division. Ms. Appleberry's probable cause determination was mailed to her on December 24, 2009. Thus, all administrative prerequisites have been met.

6. Defendant Adams County Coroner's Office and Adams County jointly employed Ms. Appleberry. Defendant Adams County Coroner's Office grants its employees Family Medical Leave Act leave, subject to the rules and regulations of Adams County. Adams County funds Defendant Adams County Coroner's Office at the sole discretion of Defendant Adams County Board of County Commissioners.

7. Defendant Adams County Coroner's Office uses Adams County Human Resources and Finance departments in its daily operations, and shares a building with the Adams County Sheriff's Office. Ms. Appleberry was eligible for all benefits and privileges associated with being an employee of Adams County, such as retirement benefits. Ms. Appleberry was paid

through the Adams County Finance Department, and her automatic payroll was through Adams County.

8. Defendant Adams County Coroner's Office and Adams County are considered a joint enterprise employing more than fifteen employees operating within the State of Colorado.

9. Ms. Appleberry is a member of a protected class based on her sex and engaged in protected activity when she complained of sexual harassment and participated in an investigation into her complaints of sexual harassment.

## IV.   PARTIES

10. Plaintiff is a citizen of the United States and was at all times relevant hereto a resident of and domiciled in the State of Colorado.

11. Defendant Adams County Coroner's Office is located at 330 North 19th Avenue, Brighton, Colorado, and has been at all times a political subdivision of the Adams County and the State of Colorado.  At all times relevant hereto, Defendants Adams County Coroner and Adams County were Ms. Appleberry's "employers" within the meaning of Title VII, as amended.

12. Defendant James Hibbard is the elected Coroner for Adams County at all times relevant herein, and is an agent of Adams County.

## V.   FACTUAL ALLEGATIONS

13. Ms. Appleberry did a paid internship with Adams County Coroner's Office as a Pathology Assistant from May 2005 to August 2005.

14. Due to her excellent performance as an intern, she started working at the Adams County Coroner's Office as a Pathology Assistant as a permanent employee in January 2006 and remained there until April 2009.

15. Ms. Appleberry received Employee of the Quarter once, and she was nominated for this award twice. She received positive annual reviews, and positive reviews from fellow professional associates.

16. The duties of the Adams County Coroner's Office include crime scene investigation surrounding the circumstances of a death, to include the identification of the deceased, performing autopsies when needed, certification of the death, notifying the next of kin, documentation of investigation and autopsy, safekeeping and disposition of evidence, and personal property of the deceased.

17. The Adams County Coroner's Office responds to calls 24 hours a day, 7 days per week. Investigators work rotating shifts to meet the response and needs of the community. The investigative staff supports office functions and assists the medical staff with toxicology collection and x-rays of the deceased as needed when not responding to the scene of a call.

18. In February 2008, Ms. Appleberry witnessed Mark Chavez unlawfully massaging co-worker Emma Hall's shoulders. Ms. Appleberry raised her concerns about Mr. Chavez's unlawful conduct with Dr. Michael Arnall, Monica Jordan, Dustin Bueno, and Ms. Hall.

19. During the first six-months of Ms. Hall's employment, in sexually suggestive manners, Mr. Chavez would often rub Ms. Hall's back, and made unwelcomed comments about Ms. Hall's appearance.

20. On April 15, 2008, Adams County employee Dr. Michael Arnall brought the inappropriate sexual conduct by Mr. Chavez to the attention of Defendant Jim Hibbard indicating that "the touching must stop." Dr. Arnall was ultimately terminated, in part for his protest and opposition of the sexual harassment endured by Ms. Hall.

21. The next day, on April 16, 2008, when called into Defendant Hibbard's office, Ms. Hall complained of Mr. Chavez's sexual harassment.

22. Also on mid-April 2008, during a period in which other employees were complaining to Defendant Hibbard concerning Mr. Chavez's unlawful conduct in the workplace, Ms. Appleberry informed Defendant Hibbard that she did not feel comfortable working around Mr. Chavez. Defendant Hibbard immediately became angry with Ms. Appleberry.

23. Immediately after this conversation, Defendant Hibbard began a series of retaliatory actions, generally making Ms. Appleberry's work environment less tolerable.

24. As a result of a sexual harassment investigation, Mr. Chavez resigned his employment in June 2008. Mr. Chavez and Defendant Hibbard were close friends, and Mr. Chavez's resignation in angered Defendant Hibbard.

25. In August 2008, Defendant Hibbard, without any justification, falsely told Ms. Appleberry that she was "cancerous," "lazy," "a sub-par employee," and he falsely accused her of "…abusing bodies," and "sabotaging the office."

26. In August 2008, Defendant Hibbard required Ms. Appleberry to work five-days per week, rather than her regular three-day work week.

27. In September 2008, Ms. Appleberry was suspended without pay for allegedly losing a decedent's property item even though it was the case investigator that failed to correctly log the property item.

28. From September through October 2008, Defendant Hibbard intentionally changed Ms. Appleberry's work schedule to prevent her from attending school. The ability for Ms. Appleberry to work for Adams County and attend school was previously agreed to by Defendant Hibbard.

29. In September 2008, Ms. Appleberry filed her Charge of Discrimination with the Colorado Civil Rights Division concerning Defendant Hibbard's ongoing harassment and retaliation.

30. In September 2008, Ms. Appleberry complained to Adams County Human Resources concerning Defendant Hibbard's ongoing harassment and retaliation.

31. In October 2008, Ms. Appleberry was interviewed by the CCRD concerning Ms. Amy Aragon's Charge of Discrimination.

32. In October, 2008, Adams County Human Resources initiated an alleged investigation, conducted by Mountain States Employers Council, into Ms. Appleberry's complaints concerning Defendant Hibbard. Ms. Appleberry was interviewed during the course of this alleged investigation.

33. In November 2008, Defendant Hibbard began to change the terms and conditions of Ms. Appleberry's employment, suddenly reprimanding Ms. Appleberry for conduct that was acceptable prior to April 2008.

34. For instance, Defendant Hibbard verbally reprimanded Ms. Appleberry for the minor error of allegedly not turning in a UPS mailing receipt on Ms. Appleberry's unpaid day off. Defendant Hibbard began unduly scrutinizing Ms. Appleberry looking for any reason to discipline her.

35. On November 13, 2008, Defendant Hibbard began a pattern of extensive surveillance of Ms. Appleberry and employee Monica Jordan using overhead autopsy suite cameras. Defendant Hibbard would use autopsy suite cameras to observe Ms. Appleberry's and Ms. Jordan's breasts. Ms. Appleberry was aware of Defendant Hibbard's unlawful actions because she could observe a television that showed what Defendant Hibbard was viewing with

36. On December 3, 2008, Ms. Appleberry and Ms. Jordan were informed that they needed a doctor's note to take sick days. This was a new requirement was only directed at Ms. Appleberry and Ms. Jordan.

37. On December 22, 2008, Defendant Hibbard requested that Ms. Jordan give Ms. Appleberry a negative performance review, without any justification or consideration of Ms. Appleberry's actual performance.

38. On or about December 2008, Ms. Appleberry was informed that all witness statements secured through the Mountain States Employers Council's investigation into Defendant Hibbard's unlawful conduct would be provided to directly Defendant Hibbard.

39. In January 2009, Defendant Hibbard gave Ms. Appleberry a "needs improvement" score on her annual review. This was by far the worst annual review Ms. Appleberry received during her employment with Adams County.

40. In January 2009, Defendant Hibbard informed Ms. Appleberry that Derek Johnson, a male employee who did not engage in protected conduct, would perform autopsies, and Ms. Appleberry would be assigned to other tasks such as cleaning.

41. On February 13, 2009, Defendant Hibbard's use of the autopsy cameras to observe Ms. Appleberry's breasts intensified. This unlawful behavior continued up to Ms. Appleberry's termination.

42. In February 2008, Defendant Hibbard removed the ability for Ms. Appleberry to change the focus of the autopsy suite cameras. Ms. Appleberry photographed James Hibbard

7

sexually harassing her with the surveillance cameras using Ms. Jordan's camera. Kelly Haralson entered the autopsy suite and attempted to confiscate Ms. Jordan's camera. Defendant Hibbard then issued a memorandum stating that no cell phones, cameras, or recording devices were permitted at the Adams County Coroner's Office.

43. On February 17, 2009, Defendant Hibbard required only Ms. Appleberry and Ms. Appleberry to wear crew-necks shirts underneath their scrubs.

44. In February 2008, Ms. Appleberry and Ms. Jordan were informed that they no longer were to perform autopsies.

45. In February 2008, Ms. Appleberry and Ms. Jordan were told to spend seven hours a day transferring formaldehyde soaked specimens. Defendant Hibbard was aware that the Coroner's Office did not have proper ventilation perform this task, and Ms. Appleberry became ill from chemical exposure. Ms. Appleberry was forced to go to the doctor.

46. In April 2009, Ms. Appleberry was written up and disciplined for alleged errors that were not her fault. Ms. Appleberry would not have been written up for these mistakes prior to her engaging in protected conduct of complaining about sexual harassment and retaliation in the workplace. Other employees who did not complain about sexual harassment and retaliation made similar errors, and were not disciplined.

47. In April 2008, Ms. Appleberry and Ms. Jordan were suspended without pay because they allegedly did not inform a colleague that they were leaving work after the end of their shifts. No other employees were subjected to this condition of employment.

48. On April 20, 2009, without warning or explanation, Defendant Hibbard accused Ms. Appleberry of theft, and terminated Ms. Appleberry's employment.

## VI.     STATEMENT OF CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 2000e, *et seq*., Title VII of the Civil Rights Act of 1964, as amended**
**Gender/Sex Discrimination and Hostile Work Environment**

49.     Plaintiff hereby incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

50.     Plaintiff, because of her gender, is a protected person under Title VII of the Civil Rights Act of 1964, as amended.

51.     Defendants treated Plaintiff, a female, less favorably than her similarly situated male counterparts.

52.     At all pertinent times, Plaintiff performed the functions of her job competently and was more than qualified for her positions at the Adams County Coroner's Office.

53.     Despite her superior qualifications and exemplary job performance, Defendants unduly scrutinized her compared to male co-workers, and terminated her employment, in whole or in part, because of her gender, while retaining less-qualified male employees.

54.     Defendants' asserted reason for Plaintiff's negative performance reviews, suspension, and termination were pretext for illegal discrimination on the basis of gender, alone or in combination with sex.

55.     Defendants have knowingly and intentionally engaged in an ongoing pattern and practice of discrimination against and harassment of Plaintiff and other similarly situated employees because of their gender/sex.

56.     Defendants have knowingly and intentionally engaged in an ongoing pattern and practice of discrimination against and harassment of Plaintiff and other similarly situated employees because of their opposition to discrimination in the workplace.

57. Defendants willfully and wantonly failed to ensure the cessation of a hostile work environment in its workplace in violation of Title VII of the Civil Rights Act of 1964, as amended.

58. In accordance with a pattern and practice, Defendants permitted an overtly abusive, sex or gender-hostile work environment to continue to exist at its workplace despite knowledge or notice thereof, and of the victimization of Plaintiff and other similarly situated individuals.

59. Defendants subjected Plaintiff and other female employees to unwelcome sexual harassment that was so severe or pervasive that it altered the conditions of their employment and created a hostile working environment.

60. The acts described herein and Defendants' refusal to take effective corrective measures created a sexually hostile work environment.

61. Defendants engaged in this conduct with malice or with reckless indifference to the federally protected rights of Plaintiff within the meaning of Title VII.

62. The sex or gender related employment practices, sexually hostile work environment and other acts or omissions of Defendants, its agents and employees, reflect Defendants' reckless and willful and wanton indifference or hostility to the protected employment rights or status of Plaintiff, directly and proximately resulting in such damages as may be proven at trial, including but not limited to, lost income and benefits; lost employment opportunities; psychological, emotional or mental anguish, distress, humiliation, embarrassment and degradation; pain and suffering; and Plaintiff's attorney fees in bringing this action.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 2000e, *et seq*., Title VII of the Civil Rights Act of 1964, as amended
### Retaliation

63. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

64. Among other things, after engaging in protected conduct:

65. Ms. Appleberry was orally and verbally reprimanded, suspended without pay, and terminated;

66. Ms. Appleberry's schedule was unfavorably changed;

67. Ms. Appleberry was assigned additional dangerous tasks with unreasonable time requirements; and

68. Ms. Appleberry was subjected to increased sexual harassment.

69. Plaintiff engaged in activities and speech in opposition to employment practices prohibited by Title VII by speaking out about and opposing the discriminatory practices of Defendants.

70. Plaintiff spoke out on behalf of herself and her fellow employees because she had a reasonable and good faith belief that discrimination was occurring in the workplace.

71. Defendants treated Plaintiff more adversely than her similarly situated counterparts who did not voice their opposition to sexual harassment in the workplace.

72. Plaintiff was subjected to adverse employment actions, in whole or in part, in retaliation for expressing her opposition to such discriminatory practices.

73. Defendants' proffered reasons for her adverse employment actions and other forms of retaliation are mere pretext for discrimination.

74. Defendants are liable for the acts and omissions of its agents and employees, including all supervisors of Plaintiff.

75. Defendants' conduct was engaged in with malice or with reckless indifference to the federally protected rights of Plaintiff within the meaning of Title VII.

76. This retaliation was consistent with a pattern and practice of retaliation against employees who oppose practices prohibited by Title VII or participate in proceedings governed by Title VII.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, and award her all relief as allowed by law, including, but not limited to the following:

a. Declaratory relief and injunctive relief, as appropriate;

b. Actual economic damages as established at trial;

c. Compensatory damages, including, but not limited to those for future pecuniary and non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

d. Equitable relief in the form of either reinstatement or front pay;

e. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

f. Pre-judgment and post-judgment interest at the highest lawful rate;

g. Attorney's fees and costs; and

h. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

DATED this 23rd day of March 2010.

                                               KILLMER, LANE & NEWMAN, LLP

                                               *s/ Qusair Mohamedbhai*
                                               _____

                                               David A. Lane
                                               Qusair Mohamedbhai
                                               1543 Champa Street, Suite 400
                                               Denver, Colorado  80202
                                               (303) 571-1000
                                               ATTORNEYS FOR PLAINTIFF